**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**Northern Division**

-----------------------------------------------------------

ROBERT J. MILLER, LAURA MILLER, OPAL JAMES-JOBES, and PHILLIP JOBES SR.,

          Plaintiff,

    v.

FRANKLIN SQUARE HOSPITAL CENTER, INC. and MEDSTAR FRANKLIN SQUARE MEDICAL CENTER.

9000 Franklin Square Drive
Baltimore, MD 21237

Serve on Resident Agent:
The Corporation Trust Incorporated
2405 York Road
Suite 201
Lutherville Timonium, MD 21093-2264

          Defendants.

-----------------------------------------------------------

Case No. 1:18-cv-1481

**JURY TRIAL DEMANDED**

## COMPLAINT

    Plaintiffs, Robert J. Miller, Laura Miller, Opal James-Jobes and Phillip Jobes Sr. ("Plaintiffs"), by and through their undersigned counsel, Eric N. Stravitz and the STRAVITZ LAW FIRM, P.C. and, of counsel, EISENBERG & BAUM, LLP, as and for their Complaint against Defendants, Franklin Square Hospital Center, Inc. and Medstar Franklin Square Medical Center ("Defendants"), hereby allege as follows:

### PRELIMINARY STATEMENT

    Plaintiffs, Robert J. Miller, Laura Miller, Opal James-Jobes and Phillip Jobes Sr. are deaf individuals who communicate primarily in American Sign Language ("ASL"), which is their expressed, preferred, and most effective means of communication. Plaintiffs bring this lawsuit

and seek a finding of discrimination under Federal and State discrimination laws so that Defendants will cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' health care services. Plaintiffs seeks declaratory relief; nominal relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116; and other state and common law causes of action.

## THE PARTIES

1.     Plaintiffs Robert J. Miller (Mr. Miller) and Laura Miller (Mrs. Miller) bring this action and are residents in Maryland. Mr. Miller and Mrs. Miller are deaf, primarily communicate in American Sign Language, and are substantially limited in the major life activities of hearing within the meaning of federal and state civil rights laws.

2.     Plaintiffs Opal James-Jobes and Phillip Jobes Sr., bring this action and are residents in Maryland. Mr. and Mrs. Jobes are deaf, primarily communicate in American Sign Language, and are substantially limited in the major life activities of hearing within the meaning of federal and state civil rights laws.

3.     Defendant FRANKLIN SQUARE HOSPITAL CENTER, INC., at all times relevant to this Complaint, has been licensed and doing business in the State of Maryland with a principal place of business at 9000 Franklin Square Dr., Rosedale, MD 21237.  Defendant is a public accommodation within the meaning of federal and state civil rights laws. Upon information and belief, Defendant is a recipient of federal financial assistance, including

Medicare and/or Medicaid reimbursements.

4.      Defendant MEDSTAR FRANKLIN SQUARE MEDICAL CENTER, at all times relevant to this Complaint, has been licensed and doing business in the State of Maryland with a principal place of business at 9101 Franklin Square Dr., Rosedale, MD 21237.  Defendant is a public accommodation within the meaning of federal and state civil rights laws. Upon information and belief, Defendant is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements.

## JURISDICTION & VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' claims arising under state law.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants reside within the jurisdiction of this district, and a substantial part of the events that give rise to the claims occurred in this district.

## STATEMENT OF FACTS

### Plaintiffs Robert J. Miller and Laura Miller

7.      Plaintiffs Robert J. Miller and Laura Miller are profoundly Deaf individuals who primarily communicates in American Sign Language.

8.      Plaintiffs have received services at Defendant's facility as a patient and/or as a companion between July 2015 and November 2016.

9.      Plaintiffs have minor children, J.M., I.M., and R.M. who were treated at the Defendant's facility between July 2015 and November 2016.

*Plaintiff Robert Miller's Treatment*

10.    On July 10, 2015, Plaintiff Mr. Miller visited the Defendants' Emergency Department for back pain.

11.    Mr. Miller's medical records from his treatment on July 10, 2015 show that he is "hearing impaired" but the Defendant's hospital failed to provide necessary auxiliary aids or services for Mr. Miller during the course of his treatment, including medication prescription, and in gaining his consent for treatment.

12.    On August 10, 2015, Mr. Miller visited the Defendant's facility for treatment, and filled out a form requesting an in-person ASL interpreter.

13.    On August 10, 2015, Defendant provided a VRI for Mr. Miller, but it was choppy, froze multiple times, and was ineffective for communication between Mr. Miller and the hospital staff.

14.    On August 10, 2015, Mr. Miller requested an in-person ASL interpreter, but Defendant failed to provide one, and he was discharged.

*Plaintiffs' son, J.M.'s Treatment*

15.    On August 31, 2015, Mr. & Mrs. Miller's minor son, J.M., received treatment at Defendant's facility.

16.    Plaintiffs, who accompanied their son, J.M., filled out a form requesting an in-person ASL interpreter on August 31, 2015.

17.    Plaintiffs wrote a note to Defendant asking for an in-person ASL interpreter as soon as possible, to communicate with Defendant's medical staff given the seriousness of J.M.'s condition on August 31, 2015.

18.    Defendant's medical staff did not provide an in-person ASL interpreter for

Plaintiffs on August 31, 2015.

19.     On September 10, 2015, Plaintiffs requested an in-person ASL interpreter but the interpreter was not provided in time for Plaintiffs' consultation with Dr. Shaab, a pediatrician; as a result, Plaintiffs and Dr. Shaab communicated using pen and paper throughout the consultation and examinations.

20.     On September 11, 2015, the date of discharge for J.M., Plaintiffs were presented with the in-person ASL interpreter request form by Defendant, and Plaintiffs indicated that that they "don't want interpreter services."

*Plaintiffs' Son R.M.'s Treatment*

21.     During July 25-26, 2015, Plaintiffs' son R.M. was admitted to Defendant's facility and requested an in-person ASL interpreter via a handwritten note to the Defendant's medical staff, but Defendant failed to provide an interpreter for Plaintiffs.

22.     During July 25-26, 2015, Defendants communicated with Plaintiffs using handwritten notes.

23.     On April 3, 2016, Plaintiffs' son R.M. was treated at Defendant's emergency department.

24.     On April 3, 2016, Defendants did not provide an in-person ASL interpreter for Plaintiffs.

25.     On April 3, 2016, Defendants compelled Plaintiffs' family (parents in law) to interpret for Plaintiffs, despite objections raised by parents in law and repeated request for an interpreter.

*Plaintiffs' Daughter I.M.'s Treatment*

26.     On January 5, 2016, Plaintiffs' daughter I.M. received treatment from Defendants'

facility for swelling and pain on her hand.

27.     On January 5, 2016, Plaintiff Laura Miller requested an in-person ASL interpreter at the registration desk, and was told that Defendants would contact an ASL interpreter.

28.     On January 5, 2016, Plaintiff Laura Miller was not provided an interpreter until four hours later, because Defendants' staff had forgotten to call an ASL interpreter.

29.     During the time that Plaintiff Laura Miller had been waiting for an interpreter on January 5, 2016, Defendants' staff relied on Plaintiffs' then-ten (10) year-old daughter I.M., to interpret for the Defendants to communicate with her mother, while her hand was swollen and in pain.

30.     At the time I.M. was asked to interpret for Plaintiff Laura Miller on January 5, 2016, I.M.'s hand was swollen and in pain, and due to drowsiness after taking allergy medication, I.M. was unable to interpret for Plaintiff Laura Miller.

31.     On January 5, 2016, twenty (20) minutes after the ASL interpreter arrived, Plaintiff's daughter I.M. was discharged.

**Plaintiffs Opal James-Jobes and Phillip Jobes Sr.**

32.     Plaintiffs Opal James-Jobe and Phillip Jobes Sr. are profoundly Deaf individuals who primarily communicate in American Sign Language.

33.     Plaintiffs Opal James-Jobe and Phillip Jobes Sr. have a minor child, Oriana Jobes who was sixteen (16) years old at the time she was treated at the Defendants' facility.

34.      On January 5, 2017, Plaintiffs requested an in-person ASL interpreter.

35.     On January 5, 2017, Defendants did not provide any auxiliary aids or services, and Plaintiffs had to wait for 20 hours for Defendants to provide an ASL interpreter.

36.     On January 5, 2017, when the ASL interpreter belatedly arrived after twenty (20) hours of Plaintiffs' waiting, the nurse spoke with the interpreter in a rude attitude, and told the

interpreter that Plaintiffs did not need an interpreter.

37.     As set forth in the foregoing paragraphs, as a result of Defendants' failure to ensure effective communication with Plaintiffs, Plaintiffs received services that were objectively inferior to those provided to hearing patients.

38.     As set forth in the foregoing paragraphs, as a result of the actions and/or inactions of Defendants, Plaintiffs were denied the same opportunities that are routinely provided to patients to participate in their own medical care.

39.     Upon information and belief, Defendants refuse to hire qualified sign language interpreters as a matter of policy and practice.

40.     Defendants intentionally discriminated against Plaintiff and acted with deliberate indifference to their communication needs, causing them to endure humiliation, fear, anxiety, and emotional distress.

## CLAIM 1: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

41.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

42.     At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq. has been in full force and effect and has applied to Defendants' conduct.

43.     At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to the Defendants' conduct.

44.     At all times relevant to this action, Plaintiffs have been substantially limited in the major life activities of hearing and speaking, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).  Defendants own, lease, and/or operate places of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

7

45.     Defendants own, lease, and/or operate a place of public accommodation within the meaning of 42 U.S.C. § 12181(7)(F).

46.     Title III of the ADA provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

47.     Title III of the ADA further provides that "[i]t shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

48.     Federal regulations implementing Title III of the ADA provide that a public "shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c).

49.     Federal regulations implementing Title III of the ADA further provide that a public entity "shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services" 28 C.F.R. § 36.303(a).

50.     Defendants discriminated against Plaintiffs, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

51.     As set forth above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiffs and/or additional deaf patients or companions.

52.     Plaintiffs are therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1).

**CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

53.     Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

54.     At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

55.     At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendants' conduct.

56.     At all times relevant to this action, Plaintiffs had substantial limitations to the major life activities of hearing and speaking, and were individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

57.     At all times relevant to this action, Defendants have been a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

58.     Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

59.     The Rehabilitation Act permits associational claims by extending relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

60.     Defendants discriminated against Plaintiffs, solely on the basis of disability, by denying them meaningful access to the services, programs, and benefits the Defendants offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of 29 U.S.C. § 794.

61. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiffs and other Deaf patients and family members.

62. Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and losses they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

63. Plaintiffs are further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## CLAIM 3: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

64. Plaintiffs repeat and reiterate every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

65. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect and applied to the Defendants' conduct.

66. At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

67. At all times relevant to this action, Plaintiffs had substantial limitations to the major life activity of hearing and speaking, and were individuals with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

68. At all times relevant to this action, Plaintiffs' primary language for communication was American Sign Language and not English; and Plaintiffs had limited ability to read, write, speak, or understand English, and were individuals with limited English

proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

69.     At all times relevant to this action, Defendants received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendants are a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

70.     Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

71.     Defendants have discriminated against Plaintiffs solely on the basis of their disability and limited English proficiency by denying them meaningful access to the services, programs, and benefits the Defendants offer to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1157, 42 U.S.C. § 18116.

72.     Defendants discriminated against Plaintiffs by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or through VRI machines that worked.

73.     As set out above, absent injunctive relief, there is a clear risk that Defendants' actions will recur with Plaintiffs and other Deaf patients and family members.

74.     Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss they sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 42 U.S.C. § 18116(a).

75.     Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court grant the following relief against Defendants:

A.   Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiffs to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, Section 1557 of the Patient Protection and Affordable Care Act, and Section 504 of the Rehabilitation Act;

B.   Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

C.   Order Defendants:

    i.   to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

    ii.   to develop, implement, promulgate, and comply with a policy requiring that when a deaf or hard of hearing individual requests an onsite interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

iii.   to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv.   to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v.   to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

vi.   to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

vii.   to train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Rehabilitation Act, and the ACA;

13

      viii.   to train all employees, staff, and other agents on a regular basis about Defendants' policies regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing patients;

D.   Award to Plaintiffs:

     i.   Compensatory damages pursuant to Section 1557 of the Patient Protection and Affordable Care Act, and Section 504 of the Rehabilitation Act;

    ii.   Reasonable costs and attorneys' fees pursuant to the ADA, Section 1557 of the Patient Protection and Affordable Care Act, and Section 504 of the Rehabilitation Act;

   iii.   Interest on all amounts at the highest rates and from the earliest dates allowed by law;

   iv.   Any and all other relief that this Court finds necessary and appropriate.

Respectfully submitted,

STRAVITZ LAW FIRM, PC

By:   /s/ Eric N. Stravitz
Eric N. Stravitz (Bar No. 23610)
4300 Forbes Boulevard
Suite 100
Lanham, MD 20706
O:  (240) 467-5741
F:  (240) 467-5743
E:  eric@stravitzlawfirm.com
*Counsel for Plaintiffs*

OF COUNSEL

Eric M. Baum, Esq.
Andrew Rozynski, Esq.
EISENBERG AND BAUM, LLP
24 Union Square East, Fourth Floor
New York, NY 10003
(212) 353-8700
ebaum@EandBlaw.com
arozynski@EandBlaw.com

## JURY DEMAND

Plaintiffs demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

/s/ Eric N. Stravitz
Eric N. Stravitz (Bar No. 23610)